UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHRISTOPHER MAURICE WATTS,

   Plaintiff,

   v.

RASHAWNDA THOMPSON,

   Defendant.

Civil Action No. 24-1300-TDC

**MEMORANDUM OPINION**

    Self-represented Plaintiff Christopher Maurice Watts, who is currently incarcerated at the Baltimore County Detention Center ("BCDC") in Towson, Maryland, has filed this civil rights action pursuant to 42 U.S.C. § 1983 in which he alleges a constitutional violation arising from the alleged failure to provide adequate medical care while he was a pretrial detainee. Defendant Registered Nurse Rashawnda Thompson has filed a Motion to Dismiss for Failure to State a Claim, or, in the Alternative, for Summary Judgment, to which Watts has filed a response. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Thompson's Motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

    In the presently operative Amended Complaint, Watts alleges that on March 4, 2024, while he was a pretrial detainee at BCDC, he submitted a sick call request for treatment of his severe allergies but received no response. He asserts that between then and April 4, 2024, he submitted more than 10 sick call requests that were ignored. According to Watts's medical records, during this period, Watts was seen by nurses for other issues on March 16, 2024 and March 25, 2024, and

on March 28, 2024, Watts was seen by a nurse, Pamela Ogeya, on a sick call request at which he requested and received a renewal of his allergy medication, Zyrtec.

On April 4, 2024, Watts reported to a correctional officer that he felt ill due to his allergies and was sent to the medical unit. According to Watts, Thompson was the medical provider on duty, and they discussed his condition. He asserts that "it was already documen[t]ed about my se[vere] allergy condition and that Benadryl made my allergy condition wors[e] once worn off so she gave Zyrtec and a steroid medication." Am. Compl. at 5, ECF No. 6. Watts returned to his cell but was instructed later that afternoon to pack his belongings because he was being placed in the medical ward on quarantine. Watts alleges that when he was in quarantine, he was forced to take Benadryl and told that he would not be removed from quarantine unless he complied. Watts asserts that after taking Benadryl, he became very ill, had hives all over his body, his throat closed, and he lost consciousness.

According to Watts's medical records, Watts did not receive his Zyrtec on the morning of April 4, 2024, because he "did not come to the med cart after last call." Med. Records at 38, Mot. Ex. C.3, ECF No. 14-7. During the sick call appointment that day at 1:55 p.m., Thompson noted that Watts had "slightly raised red-bordered circular rashes on [his] face, arms, neck, and back." Med. Records at 46, Mot. Ex. C.5, ECF No. 14-9. Based on the rash, she directed that he be placed in medical isolation and prescribed Benadryl and another medication, Diflucan. That evening, at 5:47 p.m., he was offered Benadryl, which he refused to take.

On April 5, 2024 at 3:53 a.m., after Watts was placed in quarantine, Watts was administered both Zyrtec and Benadryl by a nurse, who provided Benadryl because of Watts's complaints about itching. At 1:16 p.m. that day, Watts reported to a nurse that Benadryl "makes my asthma worse"

2

and asked for only Zyrtec to be administered. Med. Records at 23, Mot. Ex. C.5. That evening, at 8:08 p.m., Watts refused Benadryl when it was offered to him.

On April 6, 2024, Watts took Zyrtec but refused two offers of Benadryl, at 5:34 a.m. and 11:22 p.m. He was offered hydrocortisone that day to address his rash, which at that point was all over his body. During an appointment that evening, he told the nurse that he is allergic to Benadryl. By that evening, the medical staff reported that Watts was "angry and yelling" and requesting to leave the medical unit. *Id.*

The following morning, April 7, 2024, Watts again took Zyrtec and refused Benadryl. At an appointment with a physician's assistant at 1:55 p.m., he again reported that he is allergic to Benadryl and asked to be cleared from medical quarantine. Though he still had hives, he was cleared to return to the general population. Thereafter, Watts was not offered Benadryl and continued taking only Zyrtec on a daily basis.

Watts's medical records show that he was administered Zyrtec daily from October 20, 2023 to November 5, 2023, and from December 19, 2023 to April 4, 2024. The records do not show that he reported a Benadryl allergy to medical providers prior to April 5, 2024. During his intake screening on October 16, 2023, Watts denied having any known food or drug allergies. On October 20, 2023, during a sick call visit, Watts informed medical staff that he experienced seasonal allergies annually but reported no known drug allergies. Watts also denied having any allergies during a screening on December 18, 2023.

Watts alleges that Thompson violated his constitutional rights because she acted with deliberate indifference to a serious medical need. Specifically, he alleges that she is responsible for his adverse reaction to Benadryl because she ordered his placement in quarantine and treatment

3

with Benadryl, and that as a supervisor, she had constructive knowledge of the actions of her subordinates. He seeks $500,000 in damages.

## DISCUSSION

In her Motion, Thompson seeks dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment under Rule 56. As grounds, Thompson asserts that Watts has failed to allege sufficient facts to show, and the record does not support the conclusion that, Thompson acted with deliberate indifference to a serious medical need in violation of the Fourteenth Amendment to the United States Constitution. She also asserts that any negligence claims should be dismissed because Watts failed to comply with the requirements of the Maryland Health Care Malpractice Claims Act.

### I.  Legal Standards

#### A.  Motion to Dismiss

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### B.      Motion for Summary Judgment

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Thompson's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). In opposing the Motion, Watts has not asserted that he needs additional discovery in order to address the Motion. The Court will therefore construe Thompson's Motion as a Motion for Summary Judgment and may consider the submitted records. The Court will grant Thompson's Motion to Seal these records but will deny that motion as to the request to seal exhibits other than the medical records, which consist of the pleadings that are already in the public record.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

### C.   42 U.S.C. § 1983

Pursuant to 42 U.S.C. § 1983, a plaintiff may file a civil action alleging that a person acting under color of state law has violated the plaintiff's rights under the United States Constitution or federal law. *See* 42 U.S.C. § 1983. Generally, for an individual to be held liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). The doctrine of *respondeat superior*, or vicarious liability, does not apply to a § 1983 claim. *See id.*; *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A defendant who is a supervisor may be held liable if the following conditions for supervisory liability are met: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit

authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted).

## II.    Fourteenth Amendment

Because Watts was a pretrial detainee at the time of this incident, his constitutional claim is properly construed as based on the Due Process Clause of the Fourteenth Amendment, which protects the rights of such detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). The Fourteenth Amendment "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 608-09 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). A Fourteenth Amendment claim based on inadequate medical care requires a showing of deliberate indifference to a medical need, for which a pretrial detainee must demonstrate that (1) the detainee "had a medical condition or injury that posed a substantial risk of serious harm"; (2) "the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed"; (3) "the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm"; and (4) "as a result, the detainee was harmed." *Id.* at 611. Under this standard, a pretrial detainee does not have to "show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm"; "objectively unreasonable" action or inaction can be sufficient. *Id.* However, a negligent or accidental failure "to do right by the detainee" is not sufficient to establish a Fourteenth Amendment violation. *Id.* at 611–12.

To the extent that Watts is arguably asserting a claim based on the initial failure to respond to sick call requests prior to April 4, 2024, he has not alleged facts that would demonstrate that Thompson was aware of those requests, so any such claim fails.

As for his claim relating to Benadryl, although the Amended Complaint is not entirely clear, viewing the allegations in the light most favorable to Watts, he appears to have alleged that during the April 4, 2024 sick call appointment, he discussed his condition with Thompson, including that Benadryl worsened his allergy condition. Although Thompson argues that Watts's allergy to Benadryl was not previously reported or referenced in his medical records, she has not provided evidence, through a declaration or otherwise, that conclusively establishes that Watts did not tell her about this issue at the April 4 appointment. If Thompson was aware of this condition, it may have been objectively unreasonable for her to prescribe Benadryl to him. Yet the medical records show that Thompson, in fact, directed that Watts be placed in medical isolation and prescribed Benadryl. The records also show that Watts, in fact, was administered Benadryl at least once, in the early morning of April 5, 2025, almost certainly by a nurse acting pursuant to Thompson's prescription. Where Watts asserts that after taking Benadryl, he became very ill, he had hives all over his body, his throat closed, and he lost consciousness, the medication arguably posed a substantial risk of serious harm.

On this record, there remains a genuine issue of material fact on whether Watts told Thompson about his Benadryl allergy on April 4, 2024. In the absence of conclusive evidence on this point, the Court will not dismiss this claim or grant summary judgment to Thompson.

### III. Other Claims

Although Thompson also argues that any claim construed as medical negligence under state common law should be dismissed because Watts did not comply with the Maryland Health

8

Care Malpractice Claims Act ("HCMCA"), even construed liberally, the Amended Complaint does not allege any claim other than the § 1983 claim.

Even if such a claim were asserted, it would be dismissed. Under Maryland law, Thompson may assert a medical malpractice claim only if he has exhausted administrative remedies by first presenting it to the Maryland Health Care Alternative Dispute Resolution Office. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(a)(1)(i); *Wilcox v. Orellano*, 115 A.3d 621, 625 (Md. 2015); *see also Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (recognizing that this requirement applies to medical malpractice claims filed in federal court). Although Watts asserts in his memorandum in opposition to the Motion that he wrote to the HCADRO twice but received no response, he does not claim that he actually filed a claim with HCADRO or that he secured and filed a certificate of a qualified expert with a report attesting that the medical care departed from the standard of care and was the proximate cause of the alleged injury, as required by the HCMCA before any medical malpractice claim may be filed in court. *See Wilcox*, 115 A.3d at 625. Therefore, to the extent that Watts has alleged a medical malpractice claim against Thompson, it will be dismissed without prejudice. *See id.*

Finally, although Watts, in his memorandum in opposition to the Motion, appears to reference a defamation claim, such a claim cannot be considered by the Court because a plaintiff cannot amend the complaint through a brief on a motion. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

## CONCLUSION

For the foregoing reasons, Thompson's Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion for Summary Judgment, will be GRANTED IN PART and DENIED IN PART in that it will be granted as to any state medical malpractice claim and denied as to the Fourteenth Amendment claim. A separate Order shall issue.

Date: September 17, 2025



THEODORE D. CHUANG
United States District Judge